UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARYELLEN TRAUTMAN, *et al.*,

   *Plaintiffs*,

  v.

DEPARTMENT OF JUSTICE, *et al.*,

   *Defendants*.

Civil Action No. 16-cv-1629 (DLF)

## **MEMORANDUM OPINION**

  Maryellen Trautman and Anthony Clark bring this suit alleging that the Department of Justice and the National Archives and Records Administration (NARA) unlawfully withheld records in violation of the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Before the Court is the defendants' Motion for Summary Judgment. Dkt. 23. For the reasons that follow, the Court will grant the motion in part and deny it in part.

### I. BACKGROUND

  A decade ago, Maryellen Trautman, then a NARA employee, filed a complaint with NARA alleging that the Archivist of the United States, Allen Weinstein, engaged in "inappropriate or improper conduct." *See* Simms Decl. ¶ 10, Dkt. 23-2. Trautman's complaint triggered a criminal investigation that started as a joint investigation with the Federal Bureau of Investigation (FBI). *Id.* ¶ 12. Ultimately, however, no criminal charges were filed. *Id.*

  On July 8, 2016, Trautman and author Anthony Clark (collectively the "plaintiffs") submitted joint FOIA requests to NARA and the following Department of Justice components:

Office of the Attorney General; Office of the Deputy Attorney General; Office of the Associate Attorney General; FBI; and the Executive Office of United States Attorneys (collectively the "defendants"). *See* Defs.' Statement of Undisputed Material Facts ¶¶ 1, 7, 11, 17, Dkt. 23-10. Although varying in scope, the plaintiffs' FOIA requests generally sought agency records relating to the earlier criminal investigation (identified as FBI Case Number 58A-WF-237717). *Id.*

On August 11, 2016, the plaintiffs filed a complaint in this Court alleging that the defendants had unlawfully withheld records responsive to the plaintiffs' FOIA requests. Compl. ¶¶ 10, 15, 19, 23, Dkt. 1. That complaint was amended twice.[1] *See* First Am. Compl., Dkt. 3; Second Am. Compl., Dkt. 5. On November 30, 2016, NARA answered the second amended complaint, but the Department of Justice moved to dismiss all of count one against the offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, as well as part of count two against the Executive Office of United States Attorneys. Dep't of Justice's Partial Mot. to Dismiss at 1, Dkt. 11. The Department of Justice argued that dismissal was warranted because the plaintiffs failed to exhaust their administrative remedies. Dep't of Justice's Br. in Support of Partial Mot. for Summ. J. at 4, Dkt. 11.

That same day, the plaintiffs maneuvered to revive their requests for records from the offices of the Attorney General, Deputy Attorney General, and Associate Attorney General by submitting three new FOIA requests to the Office of Information Policy. *See* Castellano Decl.

---

[1] At the direction of the previously assigned judge, the plaintiffs amended their initial complaint to comply with the Court's local civil rule that governs the proper captioning of a civil complaint. *See* Minute Order of Aug. 12, 2016; First Am. Compl. at 1, Dkt. 3; LCvR 5.1(c)(1). Over a month later, the plaintiffs filed a second complaint amending count two, which claimed FOIA violations by the Executive Office of United States Attorneys. *See* Second Am. Compl. ¶¶ 11–16, Dkt. 5.

¶ 10, Dkt. 23-5; Defs.' Statement of Undisputed Material Facts ¶ 11.  Also, on December 20, 2016, the plaintiffs submitted a new FOIA request to the Executive Office for United States Attorneys that asked for the same records previously sought in their July 8, 2016 request.  *See* Francis Decl. ¶ 15, Dkt. 23-6.  The following day, the parties moved to stay proceedings before this Court pending the plaintiffs' exhaustion of administrative proceedings to address their new FOIA requests.  *See* Joint Mot. to Stay Proceedings, Dkt. 14.

After the administrative proceedings concluded, the parties returned to this Court.  *See* Joint Status Report ¶ 4, Dkt. 15 (indicating that the plaintiffs administratively exhausted their FOIA claims).  On March 17, 2017, the plaintiffs amended their complaint a third time to "replace[] . . . the original FOIA claims with new, properly exhausted FOIA claims."  Joint Status Report, Dkt. 15; *see also* Third Am. Compl., Dkt. 17.  The Department of Justice and NARA answered the amended complaint that same day.  *See* Answer to Third Am. Compl., Dkt. 18.  FOIA processing continued and was completed on June 29, 2017.  *See* Defs.' Statement of Undisputed Material Facts ¶ 6 (stating that NARA's Office of the Inspector General provided its final response on that date).  The Department of Justice and NARA then moved for summary judgment on October 30, 2017.  *See* Defs.' Mot. for Summ. J., Dkt. 23.  This case was reassigned to the undersigned on December 4, 2017.

The issues in dispute have narrowed considerably since the inception of this lawsuit and even more so since the defendants filed their motion for summary judgment.  At the summary judgment stage, the parties agreed the only remaining dispute was the adequacy of the defendants' searches.  *See* Mem. in Support of Defs.' Mot. for Summ. J. at 1, Dkt. 23 ("By agreement of the parties, the only remaining issue to be resolved on summary judgment is the

adequacy of defendants' searches for responsive records."). After the defendants filed their motion for summary judgment, however, the plaintiffs conceded the adequacy of all of the searches conducted by the Department of Justice and NARA's Office of Inspector General. Pls.' Opp'n at 4, Dkt. 24. As a result, the plaintiffs' only remaining challenge is to the searches performed by NARA's Office of General Counsel, Equal Employment Opportunity Office, and Office of Human Capital. *Id.* at 1.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA litigation, when a federal agency moves for summary judgment all facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements.'" *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (quoting *Nat'l Cable Television Ass'n, Inc. v. F.C.C.*, 479 F.2d 183, 186 (D.C. Cir. 1973)). The agency "must demonstrate that it conducted a search reasonably calculated to uncover all relevant documents," *Weisberg v. Department of Justice*, 705 F.2d 1344, 1350–51 (D.C. Cir. 1983) (internal quotation marks omitted), and must also explain in reasonable detail why an exemption applies to any withheld records, *Judicial Watch, Inc. v. Food & Drug Admin.*,

449 F.3d 141, 147 (D.C. Cir. 2006). "The system of disclosure established by the FOIA is simple in theory . . . [a] federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry*, 684 F.2d. at 126. Accordingly, "[i]n FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks and alteration marks omitted). In the absence of evidence to the contrary, the agency's affidavit is presumed to have been submitted in good faith. *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

If, on the other hand, "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available" to the agency. *Alyeska Pipeline Serv. Co. v. U.S. E.P.A.*, 856 F.2d 309, 314 (D.C. Cir. 1988). That said, courts in this jurisdiction recognize that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

**III. ANALYSIS**

Because the plaintiffs now concede that the searches by the Department of Justice and NARA's Office of Inspector General were adequate, the Court will grant summary judgment in the defendants' favor as to counts one, two, and three of the plaintiffs' Third Amended Complaint. *See* Pls.' Opp'n at 4. As a result, the only outstanding dispute is whether the searches conducted by NARA's Office of General Counsel, Equal Employment Opportunity Office, and Office of Human Capital were adequate.

When the adequacy of an agency's search is contested, the factual question is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs.*, 926 F.2d at 1201. To secure summary judgment, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To do so, the agency must submit "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched . . . ." *Id.* If "the agency affidavits . . . do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [a plaintiff] to challenge the procedures utilized," then genuine issues of material fact may exist about the adequacy of the agency's search. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980). Significantly, the D.C. Circuit recently emphasized that agency affidavits must "set forth the search terms and the type of search performed with the specificity [this Circuit's] precedent requires." *Reporters*

*Comm. for Freedom of Press*, 877 F.3d at 403 (internal quotation marks and alteration marks omitted).

The defendants' description of the searches conducted by NARA's Office of General Counsel, Equal Employment Opportunity Office, and Office of Human Capital fall short of this standard. To support its argument that NARA's searches were adequate, NARA relies on the declaration of Joseph A. Scanlon, the FOIA and Privacy Act Officer in the Office of General Counsel who "personally handled plaintiffs' FOIA request," and is therefore "aware of how NARA . . . responded to plaintiffs' request for information, as well as with how NARA responds generally to requests for access." Scanlon Decl. ¶¶ 1, 2, Dkt. 23-3. According to Scanlon, on July 8, 2016, the plaintiffs submitted a FOIA request to NARA seeking "copies of all records created, received and/or maintained by the [NARA], including cross-references, memorializing the investigation initiated in reliance upon the complaint made Ms. Trautman and which was memorialized in FBI Case Number: 58A-WF-237717." *Id.* ¶ 5. The plaintiffs confined their requested search to the period from June 1, 2007 through December 31, 2009, *id.* ¶ 7, and demanded that NARA's search should include the following record systems: "1) NARA 17: Grievance Records; 2) NARA 18: General Law Files; 3) NARA 22: Employee-Related Files; 4) NARA 23: Office of Inspector General Investigative Case Files; 5) NARA 28: Tort and Employee Claim Files; and 6) NARA 32: Alternate Dispute Resolution Files," *id.* ¶ 6.

Scanlon's declaration describes how he determined where records responsive to the plaintiffs' FOIA request were reasonably likely to be located. *Id.* ¶ 13. Scanlon explains that he relied on his "familiarity with NARA, and the office's function and responsibilities" and focused his search efforts on offices responsible for investigative activity "based on employee complaints, performance issues, or conduct issues." *Id.* Scanlon also targeted the record systems

7

that the plaintiffs identified in their FOIA request, except for the system described as NARA 22: Employee-Related Files, which Scanlon "determined, based upon [his] knowledge of the records system and the nature of the request . . . was not reasonably likely to hold responsive records." [2] *Id.* ¶ 12.

Scanlon also identified "key" staff members in NARA offices who were reasonably likely to contain potentially responsive records." *Id.* ¶¶ 13–19. In particular, he directed the staff members in the Office of General Counsel, the Equal Employment Opportunity Office, and the Office of Human Capital to review paper files and electronic records for all agency records related to the plaintiffs' FOIA request. *Id.* ¶ 14; *see also id.*, Ex. A at 1. Scanlan's directive quoted the plaintiffs' FOIA request letter verbatim, and he provided staff with a copy of the FOIA letter. *Id.* ¶ 14. Scanlan "identified the type of records to search for, locations to search for the records, and the information for which they should search." *Id.* And he directed the staff members "to search for any potentially responsive records that may have been stored in the staff members' desks, file cabinets, file drawers, file rooms; in any account on desktop PCs, laptops, smart phones, or other media; sent via email; or stored in any other location where agency information is stored." *Id.*

Staff from NARA's Equal Employment Opportunity Office, Office of Human Capital, and the attorney responsible for NARA's alternative dispute resolution program found no responsive records during their searches. *Id.* ¶ 15. As a result, Scanlon asked these offices for more information about how they conducted the searches. The Equal Employment Opportunity

---

[2] Scanlon noted in his declaration that NARA's Office of Inspector General "held responsive records" but that office "is an independent unit responsible for its own records and FOIA requests." Scanlon Decl. ¶ 11. Scanlon's search was therefore limited to "NARA's non-OIG operational records . . . ." *Id.* As noted, *supra* p. 6, the plaintiffs concede that the search conducted by NARA's OIG was adequate.

8

Office staff reported that "they searched staff email accounts, the shared and personal electronic drives, and the office computer library and found no responsive records related to any communications or complaints made by Ms. Trautman." *Id.* Staff at the Office of Human Capital reported that "they searched the Employee Relations database, where any potentially relevant records would have been located, but found no records." *Id.* The attorney responsible for NARA's alternative dispute resolution program reported that Trautman did not participate in the program during the attorney's tenure, and that any records from the timeframe identified in the plaintiffs' FOIA request had been properly disposed of in accordance with the office's documented destruction policy before the date of the plaintiff's FOIA request. *Id.*

Scanlon also contacted NARA's General Counsel who conducted a search and forwarded Scanlon's search request to an attorney in the Office of General Counsel and the Deputy Archivist. *Id.* ¶ 16. NARA's General Counsel "searched the folder he identified that could reasonably contain potentially responsive records, including e-mails, regarding the matter at issue in the plaintiffs' request." *Id.* ¶ 17. The other attorney in the Office of General Counsel searched his email archive using the term "Trautman" and also "searched the folder identified that could reasonably contain potentially responsive records." *Id.* Finally, the Deputy Archivist searched "her email and network drives for potentially responsive documents using the search terms 'MaryEllen,' 'Trautman,' and 'FBI and Weinstein.'" *Id.* None of these individuals found responsive records. *Id.* ¶ 18.

Notwithstanding these descriptions of NARA's searches, the plaintiffs contend that Scanlon's declaration is deficient because it fails to identify the search terms that the staff in the Equal Employment Opportunity Office and the Office of Human Capital used to conduct their

9

searches. Pls.' Opp'n at 5.[3] NARA counters that "agencies are not required to provide individualized descriptions of staff members' efforts to locate records in different offices." Defs.' Reply at 2, Dkt. 25. NARA asserts "[i]t is well-settled that in cases where documents are collected from several different offices, unit-specific descriptions are not required, and the affidavit of the officer ultimately responsible for the supervision of the FOIA search is sufficient," *id.* at 3 (internal quotation marks and alteration marks omitted), and cites four cases in support of this proposition: *Sea Shepherd Conservation Soc'y v. Internal Revenue Serv.*, 208 F. Supp. 3d 58 (D.D.C. 2016); *Cause of Action v. Internal Revenue Serv.*, 125 F. Supp. 3d 145 (D.D.C. 2015); *Judicial Watch, Inc. v. United States Dep't of Health & Human Serv.*, 27 F. Supp. 2d 240 (D.D.C.1998); and *Exxon Corp. v. Federal Trade Comm.*, 466 F. Supp. 1088 (D.D.C. 1978). These cases, however, predate the D.C. Circuit's recent decision in *Reporters Committee for Freedom of Press*. That case makes clear that an agency declaration's failure to

---

[3] The plaintiffs also take issue with the fact that the Office of General Counsel, Equal Employment Opportunity Office, and Office of Human Capital "provided differing levels of detail with respect to the various electronic repositories that were searched but provided no discernable reason for that distinction." Pls.' Opp'n at 5. The Court needs more detail from NARA to assess this argument. Although Scanlon does not expressly say so, his declaration suggests that the electronic repositories searched by these offices differed at least in part because the plaintiffs' FOIA request specified repositories that they wanted NARA to search, not all of which appear to be used by every office that conducted a search. Scanlon Decl. ¶ 13; *see also id.* Ex. A at 1 (listing record systems to be included in NARA's searches). For example, Scanlon contacted the Office of General Counsel about the repositories identified as NARA 18: General Law Files, NARA 28: Tort and Employee Claim Files, and NARA 32: Alternate Dispute Resolution Files, which the plaintiffs requested be searched. *Id.* Scanlon did not, however, identify any repositories associated with the Equal Employment Opportunity Office, presumably because none of the repositories identified by the plaintiffs are used by that office, but the declaration is unclear on this point. *Id.* ¶ 13. Moreover, Scanlon indicated that he contacted the Office of Human Capital about searching NARA 17: Grievance Records, *id.*, but there is no other reference to this repository in the declaration. The declaration states that the Office of Human Capital searched the "Employee Relations" database because that database was "where any potentially relevant records would have been located." *Id.* ¶ 15. Scanlon does not explain, however, whether the "Employee Relations" database is the same as NARA 17; nor does he explain why NARA 17 was never searched.

10

identify both the type of search performed and the terms used to search electronically-stored materials results in a "principal flaw" even when components, offices, units, or divisions within an agency conduct searches as part of a broader agency search. 877 F.3d at 403.

*Reporters Committee for Freedom of Press* involved a challenge to a FOIA search conducted by several components of the FBI: three "divisions," an "office," a "unit," and a "section" of the FBI. In that case, the D.C. Circuit explicitly rejected the government's argument that "[a]n agency affidavit, describing a targeted search of a specific office as part of a broader search, does not need to elaborate further to achieve the level of detail FOIA requires." *Id.* at 404 (internal quotation marks omitted). The Circuit found fault with the FBI's failure to "set forth the search terms and the type of search performed with the specificity our precedent requires." *Id.* at 402 (internal quotation marks and alteration omitted). Based on the reasoning of *Reporters Committee for Freedom of Press*, NARA must set forth the search terms and the type of search performed with specificity.

NARA next argues that any defect in Scanlon's description of the searches conducted by NARA's Office of General Counsel, Equal Employment Opportunity Office, and the Office of Human Capital is irrelevant because Scanlon ultimately determined that NARA's Office of the Inspector General was the only office that had responsive records. Defs.' Reply at 4–5. But Scanlon's declaration expressly states that he made this determination "*[b]ased on the responses received from the offices that searched for responsive records* and the information provided to me by individuals with direct knowledge of the events that are the subject of the request." Scanlon Decl. ¶ 20 (emphasis added). Because the searches conducted by NARA's Office of General Counsel, Equal Employment Opportunity Office, and Office of Human Capital informed

11

Scanlon's determination that the Office of the Inspector General was the only office with responsive records, those offices' searches are relevant.

NARA's final counterargument fails for the same reason. According to NARA, the plaintiffs' claim against NARA in count four is moot because NARA's Office of Inspector General "ultimately located, processed, and produced the very records that plaintiffs sought—i.e.,[] records 'memorializing' the investigation in question . . . ." Defs.' Reply at 6 ("Having received precisely the records they requested, and having waived any challenge to redactions or withholdings in those records, plaintiffs are not suffering any cognizable injury that is redressable under FOIA."). As noted, however, NARA's assertion that the records from the Office of the Inspector General were the only records responsive to the plaintiffs' FOIA request is derived, at least in part, from the searches conducted by NARA's Office of General Counsel, Equal Employment Opportunity Office, and Office of Human Capital. Scanlon Decl. ¶ 20. But the Court concludes that it has insufficient information to assess the adequacy of those searches, and if additional searches wind up being necessary, there remains the possibility that NARA might find additional responsive records.

Absent additional information about the searches conducted by NARA's Office of General Counsel, Equal Employment Opportunity Office, and Office of Human Capital, the Court is unable to determine whether these searches were adequate. Accordingly, consistent with this Circuit's precedent, NARA shall identify the search terms that the staff members in these offices used to search their electronic records, as well as the reason for any differences in the record systems they searched. *See Reporters Comm. for Freedom of Press*, 877 F.3d at 403. NARA shall also clarify how staff members searched their desks, file cabinets, file drawers and file rooms for nonelectronic records. *See id.*

## CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment, Dkt. 23, is granted in part with respect to counts one, two and three of the Third Amended Complaint, Dkt. 17, and denied in part without prejudice with respect to count four. A separate order consistent with this decision accompanies this memorandum opinion.

**DABNEY L. FRIEDRICH**
United States District Judge

Date: July 17, 2018